*In the*
# UNITED STATES COURT OF APPEALS
*for the*
## FIRST CIRCUIT

Nos. 16-1370, 16-1406

WAL-MART PUERTO RICO, INC.,

*Plaintiff-Appellee,*

– *v.* –

JUAN C. ZARAGOZA-GOMEZ, in his official capacity as Secretary of the
Treasury of the Commonwealth of Puerto Rico,

*Defendant-Appellant.*

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## **REDACTED PUBLIC VERSION**

**APPEAL FROM THE OPINION AND ORDER AND JUDGMENT DATED
MARCH 28, 2016, GRANTING PLAINTIFF'S REQUEST FOR A
PERMANENT INJUCTION BY THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF PUERTO RICO, NO. 3:15-cv-03018-JAF**

H. Marc Tepper
Susan Seabrook
Buchanan Ingersoll & Rooney PC
U.S.C.A. Nos. 99941, 1174383
1700 K Street, N.W., Suite 300
Washington, DC  20006
Telephone:  (202) 452-7900
Facsimile: (202) 452-7989
marc.tepper@bipc.com
susan.seabrook@bipc.com

*Attorneys for Defendant-Appellant*

Margarita L. Mercado-Echegaray
Solicitor General
Susana Peñagarícano-Brown
Assistant Solicitor General
Commonwealth of Puerto Rico
U.S.C.A. Nos. 1140532, 94233
P.O. Box 9020192
San Juan, PR  00902-0192
Telephone: (787) 724-2165
Facsimile: (787) 724-3380
marmercado@justicia.pr.gov
spenagaricano@justicia.pr.gov

## <u>TABLE OF CONTENTS</u>

I.     SUMMARY ...................................................................................1

II.    WAL-MART PR DOES NOT HAVE STANDING, THE CASE IS
       NOT RIPE, AND THE DISTRICT COURT'S ASSUMPTION OF
       JURISDICTION WAS IMPROPER. ...............................................7

III.   ALLEGED SHORTCOMINGS CONCERNING PUERTO RICO
       REFUND ACTIONS DO NOT JUSTIFY EXCUSING WAL-MART
       PR FROM COMPLYING WITH PUERTO RICO TAX LAW. .................11

IV.    THE DISTRICT COURT ABUSED ITS DISCRETION BY
       LIMITING DISCOVERY ON THE MERITS .............................................16

V.     PUERTO RICO'S ALTERNATIVE MINIMUM TAX DOES NOT
       VIOLATE THE DORMANT COMMERCE CLAUSE, FEDERAL
       RELATIONS ACT, OR EQUAL PROTECTION CLAUSE. .....................17

VI.    CONCLUSION................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boston Stock Exch. v. State Tax Comm'n*,
   429 U.S. 318 (1977)........................................................................24

*Cafeteros de P.R. v. Tesorero*,
   74 D.P.R. 752 (1953) ......................................................................15

*Container Corp. v. Franchise Tax Bd.*,
   463 U.S. 159 (1983)..................................................................23, 25

*Denton v. City of Carrollton*,
   235 F.2d 481 (5th Cir. 1956) .........................................................12

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990)..........................................................................9

*Georgia R.R. & Banking Co. v. Redwine*,
   342 U.S. 299 (1952)........................................................................13

*Hayburn's Case*,
   2 Dall. 409 (1792) ..........................................................................10

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983)............................................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................8

*Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*,
   111 U.S. 379 (1884)........................................................................11

*Ex parte McCardle*,
   7 Wall. 506 (1869) ..........................................................................11

*Muskrat v. United States*,
   219 U.S. 346 (1911)........................................................................10

*Oregon Waste System v. Dep't of Envt'l Quality of Ore.*,
511 U.S. 93 (1994) ..................................................................................22, 23

*Rosewell v. LaSalle National Bank*,
450 U.S. 503 (1981) ..................................................................................12, 13

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999) ..........................................................................................9

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ............................................................................................9

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ......................................................................................10, 11

*Warth v. Seldin*,
422 U.S. 490 (1975) ..........................................................................................9

*Westinghouse Elec. Corp. v. Tully*,
466 U.S. 388 (1984) ....................................................................................23, 24

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ..........................................................................................8

*Wisconsin v. J. C. Penney Co.*,
311 U.S. 435 (1940) ........................................................................................19

*Yiyi Motors, Inc. v. E.L.A.*,
177 D.P.R. 230 (2009) ....................................................................................15

**Other**

Constitution, Article III, § 2 ........................................................................8

Fed. Rule Civ. Proc. 12(h)(3) ....................................................................11

32 P.R. Laws Ann. § 3524(7) ......................................................................15

Law 66-2014 ............................................................................................15, 16

## I.    SUMMARY.

Wal-Mart Puerto Rico, Inc. ("Wal-Mart PR") contends that federal court jurisdiction is proper based on two factors:  the amount of tax calculated with reference to the challenged law is "lethal" and "confiscatory;" and, no refund is available due to Puerto Rico's insolvency.  (Brief for Appellee at 1-2).  Neither factor withstands even a modicum of scrutiny.

First, there is no merit to the contention that the tax that would apply to Wal-Mart PR is lethal or huge.  To wit, Wal-Mart PR's purported projections of income tax liability in connection with the challenged statute are noticeably comparable to Wal-Mart PR's **actual** reported income tax liability for the **past two tax years**



[1] ████████████████████████████████████████████████
[2] █████████████████████████████████████████████████████
███████████████████████████████████████████

Even when provided a forum that welcomed Wal-Mart PR's estimates and projections and explicitly denied the Secretary of the Treasury of the Commonwealth of Puerto Rico (the "Secretary") the ability to perform an audit of those numbers, Wal-Mart PR was unable to demonstrate that the calculation of alternative minimum tax under Act 72 produces a proportionally greater amount of income tax than that produced under prior tax law.  As the above chart illustrates, although Wal-Mart PR may consider the tax imposed by the challenged law to be "huge," the amount of income tax is in fact comparable to the income tax Wal-Mart PR has reported for the past two tax years.[3]  In any event, estimated tax liability cannot form the basis to endow a federal district court with jurisdiction to prospectively enjoin implementation of a state tax.  Wal-Mart PR improperly conflates the jurisdictional inquiry with its substantive challenge to the AMT tax.

Second, Wal-Mart PR's repeated reliance on the overarching circumstances of Puerto Rico's current financial crisis and the measures Puerto Rico has taken to address the crisis, as the basis for granting the District Court jurisdiction over this matter, is misplaced.  Wal-Mart PR's contention that "no refund is available" is nothing more than putting the cart before the horse and is a masked attempt to circumvent the tax law applicable to all taxpayers.  Filing an income tax return for

---

[3]  In fact, Wal-Mart PR's Complaint stated that Act 72 would cause its total tax liability to "rise" to approximately $45.1 million for the tax year ended January 31, 2016, ███████████████████████████████████████████ (A35).

the tax year at issue is a jurisdictional prerequisite to initiating the refund process. Wal-Mart PR has not established, and cannot establish, that it in fact had standing to pursue an income tax refund for the tax year ended January 31, 2016. More importantly, Wal-Mart PR's argument is based on the false conclusion that no refund is available. A plain, speedy, and efficient refund process is available to **all Commonwealth taxpayers**. But Wal-Mart PR adamantly refuses to file its tax return and request a refund. This Court should not countenance Wal-Mart PR's claim for preferential treatment, which also intrudes on the Commonwealth's important interest in implementing its tax policy.

Wal-Mart PR embraces rather than disputes the fact that the District Court's assumption of jurisdiction relies on its antecedent determination on the merits in favor of Wal-Mart PR.[4] This illustrates the fallacy of Wal-Mart PR's jurisdictional argument. If the premise for taking jurisdiction is to "protect a taxpayer from a blatantly unconstitutional tax" (Brief for Appellee at 1), then the condition precedent to taking jurisdiction is finding the tax unconstitutional. The issue is not whether a court must, in all cases, first determine jurisdiction before hearing evidence on the merits. However, with respect to a finding that an exception to the Butler Act exists, the jurisdictional question is clearly not contingent upon the

---

[4] "Can a federal district court protect a taxpayer from a blatantly unconstitutional tax . . . ." (Brief for Appellee at 1; *see also* Opinion and Order at 1) (stating that a taxpayer is "forced to challenge a patently unconstitutional tax by first paying it and then suing for a refund").

merits of the case, and Wal-Mart PR provides no support for this argument, perhaps because there is none.

Wal-Mart PR's arguments likewise rely on the District Court's adoption of the successively stunning positions that: (1) a plaintiff need not wait until the tax year at issue concludes in order to challenge in federal court the amount of Commonwealth income tax it thinks it may owe for the tax year; (2) a plaintiff need not bother to file an income tax return in order to establish standing in an income tax dispute for the tax year;[5] and (3) according to Wal-Mart PR, in order to establish the necessary "harm," a plaintiff need not prove that it will owe proportionally more income tax as a result of the challenged law than the amount of income tax it paid in prior years under prior tax law.

Wal-Mart PR prefaces Arguments I, III, and IV of its Brief with claims of waiver, and further claims that the Secretary did not assign error to any of the District Court's factual findings other than the discussion of the overpayment credit. (Brief for Appellee at 11, 16, 22). The Secretary has made his position clear concerning the paucity of concrete factual development on the merits, and the weight to be given to self-serving projections. (*See*, for example, Brief for

---

[5] The District Court demonstrated considerable disdain for Puerto Rico's administrative tax law, perhaps in an effort to justify its unwarranted intrusion into matters properly within the province of the Puerto Rico legislature, Secretary of the Treasury, and Commonwealth courts.

4

Appellant at 9 n.1, 15-18, 43). Thus, Wal-Mart PR's claims of "waiver" are meritless.

Because the rationale for the District Court's assumption of jurisdiction was dependent upon a finding that Wal-Mart PR would prevail upon the merits, the District Court erred in setting a limited and expedited discovery schedule on the merits of Wal-Mart PR's constitutional claims.[6] The limitations and restrictions the District Court imposed upon the proper development of the factual record at trial taint the court's factual findings and resulting analysis. It was not possible to raise an objection to the District Court's use of hypothetical information for purported "factual findings" until the District Court actually made such findings, and there is no question that the Secretary's position on the lack of adequate discovery and sufficient time to develop the factual record has been expressed repeatedly and is thus preserved.[7]

Wal-Mart PR further alleges that "the Secretary has not challenged this finding or pointed to any contrary authority or practice" in connection with the District Court's purported finding concerning the application of overpayments of

---

[6] The Secretary's position is explained at pages 17 to 22 of his Brief.

[7] The District Court acknowledged the Secretary's arguments concerning standing and ripeness on multiple occasions, and memorialized this fact in footnote 14, pages 50-51, of its Opinion and Order. The District Court likewise acknowledged the Secretary's continuing objection to the abbreviated discovery schedule and the refusal of the District Court to allow the Secretary discovery on the merits of the case. *See*, for example, footnote 22, page 68, of the Opinion and Order.

tax as credits. (Brief for Appellee at 16). The suggestion that the Secretary somehow waived his right to challenge the District Court's unsupported legal conclusions and ruminations on future events is illustrative of the pervasive misdirection created by the District Court's hasty assumption of jurisdiction in this case.[8] The District Court's speculation as to what might have happened if Wal-Mart PR were required to follow the law applicable to every other taxpayer, that is, file its income tax return and go from there, is mere conjecture.[9]

We further take issue with Wal-Mart PR's contention of what occurred after the close of its case-in-chief (Brief for Appellee at 55 (citing A1524-A1526)), arguing that the Secretary was ready to proceed with his evidence without the need or request of further discovery. Such assertion misses the mark. The Secretary emphatically argued the need to decide the threshold jurisdictional issue, as a separate question from the merits (A1505-A1524), and after duly preserving the objection, he had no choice but to present evidence. (A1524-A1526, A1540).

---

[8] One wonders if Wal-Mart PR would concede that if the District Court were to be reversed on jurisdictional grounds, Wal-Mart PR will have to wait 24 years to receive any refund granted – for whatever reason – by the Commonwealth court. Or, that Wal-Mart PR concedes it will pay in excess of $40 million in AMT for the tax year ended January 31, 2017, regardless of what actually happens over the course of the tax year.

[9] The fact that the District Court's opinion striking down the challenged statute was issued prior to Wal-Mart PR filing its income tax return would appear to render irrelevant  the court's speculation as to how amounts reported on the return would be treated.

Finally, Wal-Mart PR finds fault with the Secretary's attempt to provide a richer context for the challenged statute by referencing the legislative history and text of an earlier statute directed to preventing base erosion and profit-shifting. Wal-Mart PR is not in a position to question the goals of the legislature in adopting and refining the alternative minimum tax law applicable to corporate taxpayers. The testimony in court by the Secretary and by Víctor Pizarro Núñez, Assistant Secretary of the Internal Revenue Area of the Treasury, described the rationale and purpose of the challenged statute in ways that are wholly consistent with the Statement of Motives concerning Law 154. (*See also* SA0066). Moreover, even the District Court acknowledged the validity of the legislature's general concern:

> For Puerto Rico, or any other taxing authority, the concern is that a corporate taxpayer will "artificially deflat[e] its profits that are subject to [local] income tax."

Opinion and Order at 22 (citations omitted).

## II. WAL-MART PR DOES NOT HAVE STANDING, THE CASE IS NOT RIPE, AND THE DISTRICT COURT'S ASSUMPTION OF JURISDICTION WAS IMPROPER.

This appeal concerns the authority of a federal court to adjudicate a controversy that was not live. As previously explained in our Brief, a common thread connecting the majority of the reversible errors committed by the District Court is justiciability. The District Court failed to address the fundamental components critical to any analysis of subject matter jurisdiction – justiciability,

7

ripeness, and standing. This defect reverberates throughout the District Court's analysis and thereby renders the District Court's analysis on the merits wholly irrelevant.

The Secretary has consistently argued that Wal-Mart PR does not have standing to bring suit and that this case is not ripe. Income tax is determined annually on the basis of a taxable year, in Wal-Mart PR's case from February 1 through January 31. A taxpayer calculates its liability based on the information contained in its books and records and consistent with the applicable tax law, and then reports its liability on its income tax return filed with the Secretary. The simple fact is that Wal-Mart PR filed this litigation during the course of the affected tax year, rendering the final determination of Wal-Mart PR's income tax liability impossible. Proceeding on the presumption that income tax liability can be determined without an income tax return being filed can by definition only amount to a hypothetical judgment.

Article III, § 2 of the Constitution extends the "judicial power" of the United States only to "Cases" and "Controversies." The "irreducible constitutional minimum of standing" contains three requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First and foremost, there must be alleged (and ultimately proven) an "injury in fact" – a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'"

8

*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (*quoting Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). Second, there must be causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Third, there must be redressability – a likelihood that the requested relief will redress the alleged injury. *Id*. at 45-46; *see also Warth v. Seldin*, 422 U.S. 490, 505 (1975). This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

This Court has long required that all federal courts recognize the inherent limited nature of their own subject matter jurisdiction. To further that end, this Court has required the lower courts to constantly examine their jurisdiction and, whenever jurisdiction is questioned, to presume its absence and require the party invoking it to carry the burden of proof. **For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act** ***ultra vires***.

Federal and state courts are complementary systems for administering justice and "[c]ooperation and comity, not competition and conflict, are essential to the federal design." *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 576 (1999).

When a federal court side-steps its obligations in the face of a challenge to its jurisdiction, or by judicial interpretation expands its subject matter jurisdiction, this Court is called upon to enforce the rules for limiting jurisdiction.

The District Court ignored the narrow jurisdictional constraints on its authority to adjudicate matters and instead manufactured a special remedy for Wal-Mart PR to side-step this process. The District Court's failings are numerous but can best be summarized as follows: (a) failing to decide the distinct jurisdictional issue as a threshold matter; (b) failing to determine whether it had subject matter jurisdiction to decide a matter concerning a future harm; (c) failing to impose the burden of proof on the party seeking the exercise of jurisdiction in its favor on that matter; and (d) failing to determine the effect of jurisdiction in its judicial interpretation of a future harm.

It is well settled that hypothetical jurisdiction produces nothing more than a hypothetical judgment – which amounts to the same thing as an advisory opinion, disapproved by the Supreme Court from the beginning. *Muskrat v. United States*, 219 U.S. 346, 362 (1911); *Hayburn's Case*, 2 Dall. 409 (1792). In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), the Supreme Court adhered to the rule that a federal court may not hypothesize subject matter jurisdiction for the purpose of deciding the merits. *Steel Co.* rejected a doctrine, once approved by several Courts of Appeals, that allowed federal tribunals to pretermit jurisdictional

objections "where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *Id*. at 93. Recalling "a long and venerable line of our cases," *id*. at 94, *Steel Co.* reiterated: "The requirement that jurisdiction be established as a threshold matter is 'inflexible and without exception,'" *id*. at 94-95 (*quoting Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)); for "[j]urisdiction is power to declare the law," and "'[w]ithout jurisdiction the court cannot proceed at all in any cause,'" 523 U.S. at 94 (*quoting Ex parte McCardle*, 7 Wall. 506, 514 (1869)). Subject matter limitations on federal jurisdiction serve institutional interests. These limitations keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject matter delineations must be policed by the courts on their own initiative even at the highest level. *See Steel Co*., 523 U.S. at 94-95; Fed. Rule Civ. Proc. 12(h)(3) ("Whenever it appears that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

## III.    ALLEGED SHORTCOMINGS CONCERNING PUERTO RICO REFUND ACTIONS DO NOT JUSTIFY EXCUSING WAL-MART PR FROM COMPLYING WITH PUERTO RICO TAX LAW.

Every taxpayer – or, almost every taxpayer – understands that a condition precedent to challenging an income tax provision is the filing of the relevant income tax return. Consistent with Wal-Mart PR's theme of misdirection, it

11

essentially argues that it had a binary choice: comply with Puerto Rico tax law and thereby forego relief for decades *or* circumvent established Puerto Rico tax law by seeking immediate injunctive relief from the federal district court.

Wal-Mart PR argues that the existing refund procedures are inadequate and effectively unavailable, relying on *Denton v. City of Carrollton*, 235 F.2d 481, 485 & n.6 (5th Cir. 1956), for the premise that doubts regarding the recoverability of the refund render the forum inadequate. (Brief for Appellee at 26). *Denton* can be distinguished on several grounds. The case did not involve an income tax, but rather a license fee (coupled with the risk of imprisonment). The court found that the purpose of the law was to prevent citizens from exercising their right of free speech. The reason that there were doubts regarding the recovery of amounts paid stemmed from the fact that no general statute afforded a taxpayer a remedy for the recovery of taxes illegally or erroneously assessed, and that the tax payments would likely be deemed "voluntary" and thus not subject to recovery. None of those conditions are present under Commonwealth law, which affords Wal-Mart PR and all Commonwealth taxpayers access to administrative and judicial proceedings to recover excess taxes or taxes illegally assessed by the Treasury Department.

Wal-Mart PR mistakenly argues that the Secretary misunderstands the import of *Rosewell v. LaSalle National Bank*, 450 U.S. 503 (1981). The Supreme

Court has clarified that the requirement of a plain, speedy, and efficient remedy in state court is only a *procedural* one and is, therefore, satisfied merely when "certain procedural criteria" are met. *Id.* at 522. A state remedy meets these minimal procedural criteria so long as it "provides a taxpayer with a 'full hearing and judicial determination' at which she may raise all constitutional objections to the tax" and may therefrom seek review before the Supreme Court. *Id.* at 515 n.19. That is the case under Commonwealth law.

Wal-Mart PR further relies on *Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 303 (1952), citing the case as providing that a "suit for refund after payment" was not a plain, speedy and efficient remedy under the Tax Injunction Act, because that refund procedure was "applicable only to . . . less than 15% of the total taxes in controversy." (Brief for Appellee at 28). *Georgia R.R. & Banking Co.* can likewise be distinguished. The reference to "less than 15%" of the taxes in controversy refers to the fact that more than one taxing jurisdiction was involved. A suit for refund after payment of tax was available only in connection with taxes paid directly to the state, which amounted to less than 15% of the total taxes. Thus, the procedural remedy provided by the state court was not considered a plain, speedy, and efficient remedy under the specific circumstances of the case.

Wal-Mart PR argues that because Puerto Rico is insolvent and because the refund process in the Court of First Instance takes time, Wal-Mart PR's

13

circumstances require special treatment and the finding of an exception to the Butler Act. The black hole in this argument is the lack of an income tax return to provide a foundation for Wal-Mart PR's claim, regardless of whether Wal-Mart PR is seeking injunctive relief under § 1983 or a refund of tax.

The uncontroverted fact is that Wal-Mart PR had yet to file its Puerto Rico income tax return for the fiscal year ended January 31, 2016, when the District Court issued its Opinion and Order. The length of time it might take Wal-Mart PR to seek and receive an income tax refund under circumstances in which it had not yet filed the relevant income tax return is utterly immaterial. The refund process is wholly irrelevant to Wal-Mart PR's claimed "harm" because that process was not yet invoked, and could not be invoked. Nevertheless, both the District Court and Wal-Mart PR measure Wal-Mart PR's "harm" in part on the length of time it might take Wal-Mart PR to obtain a refund.

Wal-Mart PR argued, and the District Court nonsensically agreed, that because the Secretary would take the position in the Court of First Instance that Wal-Mart PR must comply with Puerto Rico administrative tax law – file the relevant income tax return and otherwise comply with the applicable procedures for pursuing an income tax refund – no "plain, speedy, and efficient" remedy is available to Wal-Mart PR. Said position leads to the unprecedented conclusion that Wal-Mart PR need not comply with Puerto Rico law. This, despite the fact

that under Commonwealth law, all taxpayers must comply with applicable procedures under the Revenue Code, including the need to file a tax return as a condition precedent to challenging its tax liability.

The Secretary opposes and will continue to oppose taxpayer challenges seeking to enjoin the assessment and collection of tax. Anti-injunction provisions are quite naturally the first line of defense for officials responsible for enforcing the laws applicable to tax revenue assessment and collection. *See* 32 P.R. Laws Ann. § 3524(7) (directing that an injunction or an order for a temporary restraining order is not available "to prevent the levying or collection of any tax levied by the laws of the United States or of Puerto Rico"); *see also* SA367-368 (citing *Yiyi Motors, Inc. v. E.L.A.*, 177 D.P.R. 230, 274-75 (2009)). Since the public interest in securing the fiscal resources necessary to conduct public affairs is superior to the economic and individual interest of a taxpayer, this Court cannot endorse Wal-Mart PR's contention that the Commonwealth's important and valid public policy should be construed as depriving a taxpayer of plain, speedy and efficient relief. (*See* SA372 (*citing Yiyi Motors, Inc.*, 177 D.P.R. at 279, and *Cafeteros de P.R. v. Tesorero*, 74 D.P.R. 752, 764 (1953))).

Wal-Mart PR cannot insist on a tailored judicial remedy in federal court on the basis of Law 66-2014, the Special Fiscal and Operational Sustainability Act of 2014, which provides that judgments will be paid subject to several conditions,

15

including payment through installments.  It bears noting that Law 66-2014 only applies to judgments.  Thus, Wal-Mart PR errs in suggesting that any and all refunds would be subject to Law 66-2014.  Wal-Mart PR cannot use the potential application of a valid Commonwealth statute that applies to all judgment creditors, to invoke federal jurisdiction.  It certainly cannot use this case to wage a collateral attack on a valid law that serves legitimate state interests.  In any event, this Court need not delve upon the intricacies of Law 66-2014, given that Wal-Mart PR has not even requested a refund and has not initiated proper proceedings within the Commonwealth courts.

## IV.     THE DISTRICT COURT ABUSED ITS DISCRETION BY LIMITING DISCOVERY ON THE MERITS.

Consideration of the circumstantial posture is especially important to analysis of Wal-Mart PR's case.  In essence, the foundation of the District Court's Opinion and Order was forged by a blanket acceptance of hypothetical projections coupled with a bastardization of the discovery process.  Once Wal-Mart PR files its income tax return for its tax year ended January 31, 2016, the Secretary has the authority to examine that return to determine Wal-Mart PR's correct tax liability.

If the Secretary makes adjustments to the items reported by Wal-Mart PR on its return, these adjustments could raise the amount of tax calculated under the parallel "regular" tax calculation and thereby eliminate entirely the "harm" claimed

by Wal-Mart PR, notwithstanding that the resulting income tax liability would equal or exceed the amount currently estimated to be due.  The District Court appreciated this fact, and explicitly expressed its intention to intervene in order to spare Wal-Mart PR the time and hassle of complying with the administrative tax law applicable to all other Puerto Rican taxpayers, big or small.  The District Court's smitten view of Wal-Mart PR is evident in its expression that Wal-Mart PR should not have to "wait until around May 2016 to file a refund claim," particularly when the District Court predicted that Wal-Mart PR's return would be the subject of "one of the one-in-twenty audits that take Treasury more than four years to complete."  (Opinion and Order at 61).

In a case where the plaintiff's very standing to bring suit relies on the plaintiff establishing harm, the District Court's combined actions in intertwining separate questions and preventing the Secretary from taking adequate discovery all but ensured the ultimate outcome.

**V.    PUERTO RICO'S ALTERNATIVE MINIMUM TAX DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE, FEDERAL RELATIONS ACT, OR EQUAL PROTECTION CLAUSE.**

In order to properly address Wal-Mart PR's constitutional arguments, it is helpful to provide some basic context.  Wal-Mart PR repeatedly refers to Act 72 of the AMT – the provision of Puerto Rico tax law that Wal-Mart PR is challenging – as the "transfer-based AMT."  This terminology suggests that the AMT is a

17

transfer tax, that is, a tax calculated (and generally paid) on a transaction-by-transaction basis. Most of the cases relied upon by Wal-Mart PR involve taxes imposed on a transactional basis, **rather than an income tax basis**. One difference between capturing tax on a transaction-by-transaction basis and capturing tax on an income tax basis is that income tax is calculated and reported annually on the basis of a taxable year. This is especially important when considering whether a statute violates the Dormant Commerce Clause *on its face*, because in the case of the AMT, the extent to which the AMT may apply – if at all – is not certain until the close of the taxable year. Moreover, there are two alternative calculations for tentative AMT that are compared to the "regular" tax calculation, meaning that even if the AMT is triggered, it may not be the result of Act 72. (Addendum at 111-12).

There are at least three things to consider when evaluating Puerto Rico's statute. First, Act 72 is designed to capture a fair amount of income tax from large multinational corporations doing business in Puerto Rico. Second, the AMT component will not always be the mechanism by which a corporation's income tax is calculated. If a taxpayer's "regular" tax exceeds tentative AMT calculated with reference to the tangible personal property component, Act 72 is not a part of that

year's tax calculation.  Third, taxes computed under the AMT provide a credit for future tax years when the taxpayer is subject to "regular" tax.[10]

Beginning on page 41 of its Brief, Wal-Mart PR argues that the challenged statute does not serve its purported purpose in connection with preventing erosion of the tax base.  Wal-Mart PR exclaims that the Secretary admitted that "Treasury does not even *suspect* that Wal-Mart Stores or Wal-Mart PR" have improperly set transfer prices.  (Brief for Appellee at 46; emphasis in original).  Elsewhere in Wal-Mart PR's Brief, Wal-Mart PR observes again that "the Treasury did not believe Wal-Mart PR was improperly manipulating its transfer prices." (*Id.* at 52).

These repeated proclamations must be considered in context.  The Secretary had no factual basis to assert that Wal-Mart PR had engaged in transfer pricing in connection with Act 72 because the affected income tax return had not even been filed yet.  Moreover, a review of "transfer pricing" between Wal-Mart Stores, Inc., and Wal-Mart PR would not have accurately captured the scope of any transfer pricing review, because Wal-Mart Stores, Inc., ███████████████████ ████████████     ████████████████████████████

---

[10] The text of Act 72 is at Addendum 111.  The mechanics of Act 72 and Puerto Rico's AMT are discussed in more detail in the Secretary's Brief at, for example, pages 27-28 at footnote 7, and pages 41-42.

[11] ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████





In order to fully appreciate the potential impact, if any, of Act 72 on Wal-Mart PR's operations, the above figures would have to be subjected to an income tax audit, along with Wal-Mart PR's income tax return that would have included the effect of Act 72. Indeed, it would have been inappropriate for the Secretary – or any other witness – to speculate about or opine on the tax effect of those changes in the absence of an in-depth examination of the relevant income tax return.

It is evident from Wal-Mart PR's Brief that Wal-Mart PR is selectively ignoring or overlooking bulk sections of the Secretary's brief.  For example, in connection with the three elements identified in *Oregon Waste System v. Dep't of Envt'l Quality of Ore.*, 511 U.S. 93 (1994), Wal-Mart PR argues, on pages 47-48 of its Brief, that the Secretary "has not identified the existing intrastate tax burden on Puerto Rican taxpayers," despite the fact that the Secretary identified the existing intrastate burden in **bold**, no less, on page 46 of his Brief.  Wal-Mart PR further argues that the Secretary "has not shown that the AMT is roughly approximate (but does not exceed) the amount of that existing intrastate tax; and (3) has not shown that the events on which the interstate and intrastate taxes are imposed are 'substantially equivalent.'"  (Brief for Appellee at 48).

*Oregon Waste System* involved a purportedly cost-based surcharge on the in-state disposal of solid waste generated in other states whereby shippers of out-of-state solid waste were charged $3.10 per ton to dispose of such waste in Oregon landfills, as compared to the $0.85 per ton fee charged to dispose of Oregon waste in those same landfills.  *Oregon Waste System*, 511 U.S. at 97.  As an initial matter, there are distinct differences between the imposition of a tax imposed by reference to the weight of the waste being disposed of and the imposition of an annual income tax on corporations.  In the case of a more-or-less integrated business enterprise operating in more than one state, arriving at precise territorial

allocations of "value" for purposes of determining the proper amount of tax is often an elusive goal, both in theory and in practice. *See Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159 (1983), cited in the Secretary's Brief at page 44. For this reason and others, the Supreme Court has "long held that the Constitution imposes no single formula on the States." *Id.* at 164 (citing *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 445 (1940)).

As for the third element of *Oregon Waste System*, the language of the challenged statute specifically identifies "exempted" transactions as those that have been subjected to income tax in Puerto Rico (because under Puerto Rico's system of corporate income taxation, the parties are each taxable entities in Puerto Rico, whether related parties or not).

Similarly, Wal-Mart PR's Brief misses the mark in addressing the captive nature of the transactions at issue here. In *Westinghouse Elec. Corp. v. Tully*, 466 U.S. 388, 390 (1984), the Supreme Court struck down a so-called "franchise tax" in New York requiring the consolidation of the receipts, assets, expenses, and liabilities of a subsidiary Domestic International Sales Corporation (DISC) with those of its parent corporation. *Id.* at 393. "In an attempt to 'provide a positive incentive for increased business activity in New York State,' however, the legislature provided a 'partially offsetting tax credit,'" which was limited to gross receipts from export products "'shipped from a regular place of business of the

taxpayer within [New York].'"  *Id*.  The Supreme Court invalidated the tax credit and was specifically concerned about the statute's effect on activities in other states.  The tax credit "ha[d] the effect of allowing a parent a greater tax credit on its accumulated DISC income as its subsidiary DISC move[d] a greater percentage of it shipping activities into the State of New York."  *Id*. at 400.  More concerning for the Court was that "the adjustment decrease[d] the tax credit allowed to the parent for a given amount of its DISC's shipping activity conducted from New York as the DISC increase[d] its shipping activities in other States."  *Id*.  "[N]ot only [did] the New York tax scheme 'provide a positive incentive for increased business activity in New York State, but also it penalize[d] increases in the DISC's shipping activities in other States."  *Id*. at 400-01 (citations omitted).  Similarly, in *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 328-329 (1977), the state imposed a greater tax liability on out-of-state transactions than on in-state transactions.

In those cases, the respective states acted to protect local interests at the expense of out-of-state competitors.  In sharp contrast, Act 72 does not protect local industries or treat in-state companies differently from out-of-state companies, nor does it provide a tax incentive for companies to move operations.  Rather, it bears repeating that the statute does not implicate transactions in which potential sellers are seeking to compete for or with Wal-Mart PR's business.  Because Act

72 does not protect corporations operating solely in-state – all corporations doing business in Puerto Rico are subject to the corporate income tax and the AMT provisions – Act 72 as a component of the AMT, passes muster under the internal consistency test.  Act 72 serves as a proxy for the tax that would be imposed upon profits that are shifted to related parties, and operates to relieve the Commonwealth authorities from the burdensome task of establishing that profits have been shifted through manipulation of transfer prices between the related parties.   It is unnecessary to use any such proxy in the case of related parties, both of which are subject to the Commonwealth's taxing jurisdiction – even if the profits are shifted in that case – as it is within the power of the Commonwealth to make any necessary determinations through its jurisdiction over all parties.  The distinction has an entirely reasonable basis and advances a legitimate purpose to backstop the Commonwealth's related party transfer pricing rules and prevent "leakage" of its tax base, without being over-inclusive.  These justifications demonstrate that Act 72 does not have an external consistency problem.  It is undisputed that states seek to ensure that multinational corporations are appropriately and proportionally taxed based on the business activity generated within the state.  *See*, *e.g., Container Corp.*, 463 U.S. 159.

## VI.    <u>CONCLUSION.</u>

For the foregoing reasons, this Court should reverse the Judgment and remand for dismissal for lack of jurisdiction or, in the alternative, reverse the Judgment and vacate the District Court's holdings with respect to the dormant Commerce Clause, the Federal Relations Act, and the Equal Protection Clause. Any other result would improperly open the floodgates for Commonwealth tax cases to be heard in the United States District Court for the District of Puerto Rico.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, on May 31, 2016.


By:  */s/ H. Marc Tepper*
H. Marc Tepper
Susan Seabrook
Buchanan Ingersoll & Rooney PC
U.S.C.A. Nos. 99941, 1174383
1700 K Street, N.W., Suite 300
Washington, DC  20006
Telephone:  (202) 452-7900
Facsimile: (202) 452-7989
marc.tepper@bipc.com
susan.seabrook@bipc.com


By:  */s/ Margarita L. Mercado-Echegaray*
Margarita L. Mercado-Echegaray
Solicitor General
Susana Peñagarícano-Brown
Assistant Solicitor General
Department of Justice
Commonwealth of Puerto Rico
U.S.C.A. Nos. 1140532, 94233
P.O. Box 9020192
San Juan, PR   00902-0192
Telephone: (787) 724-2165
Facsimile: (787) 724-3380
marmercado@justicia.pr.gov
spenagaricano@justicia.pr.gov

*Attorneys for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the Reply contains no more than 7,000 words.

The exact number of words in the Reply, counted by Microsoft Word, is 6,208.

*/s/ H. Marc Tepper*_____
H. Marc Tepper

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 31, 2016, I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system.  I certify that the following parties or their counsel of record are

registered as ECF Filers and that they will be served by the CM/ECF system:

Neal Manne
Joseph S. Grinstein
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas  77002

Shawn Rabin
Steven M. Shepard
SUSMAN GODFREY LLP
560 Lexington Avenue, Fifteenth Floor
New York, New York  10022-6828

Juan A. Marqués-Díaz (Bar No. 17203)
Francisco G. Bruno (Bar No. 41059)
Alejandro J. Cepeda-Diaz (Bar No. 1134276)
McCONNELL VALDÉS LLC
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: (787) 250-2619/5608
Fax: (787) 759-2772/620-8325

*Attorneys for Plaintiff-Appellee*

*/s/ H. Marc Tepper*
H. Marc Tepper

29